[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 11-11422

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 22, 2012
JOHN LEY
CLERK

D.C. Docket No. 6:10-cv-00265-MSS
Bkcy. No. 3:03-bk-04837-JAF

In Re: JANICE K. JENNINGS,

                                               Debtor,

BRANDON JAMES MAXFIELD,

                                               Plaintiff - Appellee,

versus

JANICE K. JENNINGS,

                                             Defendant - Appellant.

Appeal from the United States District Court
for the Middle District of Florida

(February 22, 2012)

Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Janice K. Jennings appeals from a district court order ruling that her debt from a fraudulent transfer judgment was nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(6). That section excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." *Id.* We are asked to determine whether a fraudulent transfer of property by a co-conspirator constituted a willful and malicious injury under § 523(a)(6). After a review of the record, and with the benefit of oral argument, we affirm.

I.

When Appellee Brandon James Maxfield was seven years old, he was rendered permanently quadriplegic after being shot by the accidental discharge of a handgun. The handgun was manufactured by Bryco Arms, Inc., and distributed by B.L. Jennings, Inc., companies controlled by Appellant Janice Jennings's former husband, Bruce Jennings. In May 2001, Maxfield sued Bruce Jennings and the two companies for personal injury in California state court.

In December 2001, Maxfield filed an amended complaint to add Janice (Bruce's second ex-wife), Anna Leah Jennings (his third ex-wife), and RKB Investments as defendants in the personal-injury action, seeking to hold them liable under joint venture/enterprise, partnership, and alter-ego theories. RKB is a

partnership created by Bruce and Janice, who acted as co-trustees of three California trusts that were the three partners in RKB. RKB held title to a parcel of property, called Shoreview, which is relevant to the instant proceedings.

In February 2002, Bruce directed Janice to execute a deed on behalf of RKB transfering Shoreview to Anna Leah Jennings. When Janice completed the transfer, Bruce recorded the deed. Maxfield became aware of the transfer through Bruce's responses to interrogatories in the personal-injury action. In response, Maxfield filed a complaint in California state court against Janice, RKB, and the trusts forming RKB's partnership, alleging fraud, conspiracy, and fraudulent transfer.

On May 13, 2003, a jury found Bruce, Bryco Arms, Inc., and B.L. Jennings, Inc. liable for Maxfield's injury, and awarded Maxfield $24,774,146.53 in damages. At that time, there had been no determination as to Maxfield's joint venture/enterprise, partnership, and alter-ego claims against Janice, Anna Leah, and RKB. The next day, Janice, Bruce, Bryco Arms, Inc., B.L. Jennings, Inc., and RKB filed Chapter 11 bankruptcy petitions. Janice's petition was later converted to a Chapter 7 petition. Janice and RKB filed declaratory actions seeking to determine which of their assets creditors, including Maxfield, may reach.

Shortly thereafter, Maxfield's state cases were transferred to the bankruptcy

3

court and joined with the declaratory actions. Then, in June 2007, the court concluded that Janice participated in a joint venture with Bruce, Bryco Arms, Inc., and B.L. Jennings, Inc., and was therefore jointly and severally liable with those parties for damages awarded to Maxfield in his personal injury suit. The court also found that Janice was a conspirator with Bruce and RKB in the fraudulent transfer of Shoreview and was therefore jointly and severally liable for the damages to Bruce's creditors in the amount of $3,900,000, the value of Shoreview.

In reaching these conclusions, the bankruptcy court made several findings. Although Janice testified that the deed she signed to Shoreview was a replacement deed for one executed in 1995 as part of Bruce's divorce settlement with Anna Leah, the court found this testimony incredible in light of earlier testimony in an unrelated case that Bruce had no outstanding obligation to Anna Leah resulting from their divorce. Instead, the court found that Janice "knew that RKB was a defendant in the Maxfield case, in which Maxfield was claiming millions of dollars in damages." And she knew that Shoreview, a multi-million dollar property, was unencumbered. Thus, the bankruptcy court concluded that Janice was liable to Bruce's creditors for the value of Shoreview because she "knew that RKB, through Bruce Jennings, intended to transfer the Shoreview Property to Anna Leah Jennings to keep it out of the hands of creditors."

4

Janice never challenged the bankruptcy court's ruling. And in December 2007, Maxfield filed an adversary complaint in bankruptcy court against Janice, seeking an exception under 11 U.S.C. § 523(a)(6) to Janice's Chapter 7 debt discharge, in the amount of Shoreview's value. Under § 523(a)(6), any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge in bankruptcy. 11 U.S.C. § 523(a)(6). Janice responded by filing a motion to dismiss. The bankruptcy court granted that motion, concluding that a conspiracy claim, such as the one here against Janice, was not the sort of intentional tort that § 523(a)(6) required for discharge. On appeal, the district court reversed and remanded, finding "that in certain circumstances willful and malicious injury may be inflicted by a co-conspirator."

On remand, the bankruptcy court granted Janice's motion for summary judgment, finding that the debt owed—which the court said resulted from the personal injury suit—did not result from willful and malicious injury by the debtor. Furthermore, the bankruptcy court found that, even though Janice aided in the Shoreview transfer with knowledge of the Maxfield suit and of Bruce's desire to keep Shoreview out of his creditors' hands, her conduct and knowledge were "insufficient as a matter of law to establish the intent to harm or cause injury to [Maxfield] as required by § 523(a)(6)." And the court stated that, even if Janice

5

acted with intent to harm Maxfield under that section, her participation in the conspiracy "was not substantially certain to cause injury to" Maxfield because the Shoreview transfer occurred over a year before Maxfield obtained a judgment in his personal injury action.

Maxfield again appealed to the district court, arguing that Janice's active participation in the fraudulent transfer satisfied the "willful and malicious" standard in § 523(a)(6), and that he possessed a cognizable interest in Shoreview at the time of its transfer sufficient to establish that Janice's actions were substantially certain to cause him injury. The district court agreed. The court emphasized that evidence in the record showed that Janice knew that: (1) the Shoreview deed was not a replacement deed that was part of the 1995 divorce between Bruce and Anna Leah; (2) Bruce had no outstanding obligations to Anna Leah from their 1995 divorce; (3) RKB, Janice, and Anna Leah were defendants in Maxfield's personal injury action, which involved millions of dollars in damages; (4) Bruce invested millions of dollars in Shoreview, which was unencumbered; and (5) RKB, through Bruce, intended to transfer Shoreview to keep it out of the hands of creditors. And the district court pointed out that the bankruptcy court had discredited Janice's self-serving testimony that she did not know the nature of the Shoreview transfer.

6

The district court concluded that this evidence, which was sufficient to establish a fraudulent transfer, also satisfied the requirements of § 523(a)(6). Specifically, the court found that Janice's "undisputed conduct constitute[d] a willful and malicious attempt to injure Maxfield's interests, as a matter of law on this record." The court made clear that the fact that Maxfield's personal injury claim had not been reduced to a judgment before he initiated his fraudulent transfer claim did not affect the § 523(a)(6) analysis because, under California law, a tort claimant is a "creditor" who may attack a fraudulent transfer. The court therefore reversed the bankruptcy court's ruling, concluding that, as a matter of law, Janice's adjudicated debt of $3,900,000 was nondischargeable under § 523(a)(6). The district court directed the bankruptcy court to enter judgment in favor of Maxfield. This appeal followed.

## II.

"The bankruptcy court's findings of fact are reviewed 'under the clearly erroneous standard.'" *In re Builders Transp., Inc.*, 471 F.3d 1178, 1184 (11th Cir. 2006) (quoting *In re Fretz*, 244 F.3d 1323, 1326 (11th Cir. 2001)). "'Conclusions of law, whether from the bankruptcy court or the district court, are reviewed *de novo*.'" *Id.* (quoting *In re Fretz*, 244 F.3d at 1326). Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material

7

Case 6:10-cv-00265-MSS Document 29-1 Filed 05/08/12 Page 8 of 14 PageID 484

Case: 11-11422     Date Filed: 02/22/2012     Page: 8 of 13

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, we review *de novo* the bankruptcy and district courts' judgments as a matter of law. *In re Builders Transp.*, 471 F.3d at 1184.

## III.

This appeal presents the issue of whether Janice Jennings willfully and maliciously injured Maxfield or his property under 11 U.S.C. § 523(a)(6). Janice Jennings argues that (1) neither Maxfield nor his property suffered an injury; and (2) even if an injury occurred, the injury was not inflicted willfully or maliciously. Each of these is addressed in turn.[1]

A.   Injury to Maxfield or his property

Section 523(a)(6) excepts from discharge in bankruptcy any debt that results from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Janice contends that, because her obligation to Maxfield via the personal injury judgment arose after the

---

[1] Janice argues, in the alternative, that the district court erred in directing judgment in favor of Maxfield because it did not address her affirmative defense for setoff based on an alleged $3 million payment Maxfield received in a settlement agreement. But Janice never mentioned this defense in response to Maxfield's brief before the district court, as required by Rule 56 of the Federal Rules of Civil Procedure. *See Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) ("If the movant bears the burden of proof on an issue because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense."). Because she failed to argue the issue before the district court, it is waived here. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1240 (11th Cir. 2010).

8

fraudulent transfer, she could not have injured Maxfield or his property by transferring Shoreview.

In support of this argument, Janice urges us to follow the decision of the Ninth Circuit in *In re Saylor*, 108 F.3d 219 (9th Cir. 1997), which also involved an alleged fraudulent transfer under California law.[2] In that case, the Ninth Circuit affirmed the bankruptcy and district courts' findings that a debt incurred through a state court breach-of-contract judgment did not give a creditor an actual property interest in property that the debtors had transferred fraudulently during the pendency of the breach-of-contract action. *Id.* at 220-21. Because the creditor had no security interest in the property transferred and no judgment on the fraudulent transfer claim at the time he brought the nondischargeability complaint, the creditor lacked standing to seek exception from discharge under § 523(a)(6). *Id.* at 221.

We are not persuaded to apply *In re Saylor* here because this case presents a critical distinction: Maxfield had obtained a judgment on his fraudulent transfer claim at the time he initiated a nondischargeability claim under § 523(a)(6). Thus, unlike in *Saylor*, Maxfield had a judgment that established a right to payment

---

[2] Although not binding, the reasoning employed by the Ninth Circuit is persuasive. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

9

based on the damage Janice did to his property interest in collecting on his personal injury judgment by transferring Shoreview.

In this way, Maxfield's nondischargeability claim is more like that in a subsequent *en banc* case from the Ninth Circuit, *In re Bammer*, 131 F.3d 788 (9th Cir. 1997) (*en banc*). In that case, Alta Bammer faced an order of restitution to compensate several embezzlement victims, including James Murray. *Id.* at 790. Bammer fraudulently transferred a mortgage on her home to her son, Steven, to avoid paying Murray. *Id.* Murray sued in California state court for fraudulent transfer and obtained a judgment against Alta and Steven Bammer. *Id.* at 790-91. In its order, the state court emphasized that the two had actual intent to defraud creditors, including Murray. *Id.*

When Steven Bammer filed a bankruptcy petition, Murray sought to have the fraudulent transfer debt excepted from discharge under § 523(a)(6). *Id.* The bankruptcy court found that the debt was dischargeable, but the *en banc* Ninth Circuit reversed. *Id.* at 790, 793. The court emphasized that Murray had already obtained a fraudulent transfer judgment. Further, "[j]ust as important . . . as this [fraudulent transfer] judgment, however, [were] the findings of the Superior Court in Murray's civil case against Steven on which the judgment was based." *Id.* at 791. The findings of actual intent, without just cause, to injure Murray's property

10

(his right to restitution), in conjunction with the fraudulent transfer judgment, led the Ninth Circuit to conclude that the transfer was a willful and malicious injury to Murray's property. *Id.* at 791-93.

Here too, the bankruptcy court found that Janice Jennings knowingly conspired with Bruce to transfer Shoreview with the intent to keep its value from Maxfield's reach. Based on this finding, just as the state court did in *Bammer*, the bankruptcy court awarded judgment in favor of Maxfield for Janice's fraudulent transfer. We find the court's reasoning in *Bammer* persuasive. And because here Maxfield obtained a fraudulent transfer judgment, complete with a finding that Janice intended to prevent Maxfield from satisfying his personal injury claim, we conclude that Janice's transfer was an injury to Maxfield's property.

B.    Willful and malicious injury

Janice argues, in the alternative, that any injury to Maxfield or his property was not willful and malicious.

We have held that proof of "willfulness" requires "'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'" *In re Walker*, 48 F.3d 1161, 1163 (11th Cir. 1995) (quoting *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989)). "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is

11

to cause injury or which is substantially certain to cause injury." *Id.* at 1165; *see also Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (holding that § 523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury). Recklessly or negligently inflicted injuries are not excepted from discharge under § 523(a)(6). *Kawaauhau*, 523 U.S. at 64.

"Malicious" means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Walker*, 48 F.3d at 1164 (quoting *In re Ikner*, 883 F.2d at 991). To establish malice, "a showing of specific intent to harm another is not necessary." *In re Ikner*, 883 F.2d at 991.

Here, the evidence in the record showed that Janice transferred Shoreview willfully and with malice. She knew that the purpose of the transfer was to keep Shoreview out of the reach of creditors. She was acutely aware of Maxfield's personal injury claim, because she, Bruce, and their trust, RKB, were named as defendants in the suit just three months before the transfer. Janice admitted these facts, despite her later testimony to the contrary. This evidence illustrates that Janice acted willfully in preventing Maxfield from reaching Shoreview to satisfy part of his personal injury judgment. And she had no just cause to effect the transfer: she knew Anna Leah had no claim to Shoreview, and she knew Bruce had no legitimate reason to transfer it to her. She effected the transfer without just

12

Case 6:10-cv-00265-MSS Case: 3:07-aps-00308-JAF Document 25-1 Doc 61 Filed 05/08/12 Filed: 05/08/12 Page 13 of 14 PageID 489

Case: 11-11422    Date Filed: 02/22/2012    Page: 13 of 13

cause, and therefore did so with malice.

## IV.

Because Maxfield satisfied the elements of § 523(a)(6) by showing that Janice willfully and maliciously injured his property, the district court properly concluded that the fraudulent transfer was not dischargeable as part of the bankruptcy proceeding.

**AFFIRMED.**

Case: 11-11422    Date Filed: 02/22/2012    Page: 1 of 1

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 22, 2012

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 11-11422-EE
Case Style: Brandon Maxfield v. Janice Jennings
District Court Docket No: 6:10-cv-00265-MSS
Secondary Case Number: 3:03-bk-04837-JAF

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellants.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Lois Tunstall, EE at (404) 335-6224.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs